IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALANA RENEE NOLEN-DAVIDSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-1085-P |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |
| | § | |
| | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate are as follows:

FINDINGS AND CONCLUSIONS

I. STATEMENT OF THE CASE

Plaintiff Alana Renee Nolen-Davidson ("Nolen-Davidson") filed this action pursuant to

Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security terminating her disability insurance benefits ("DIB") under Title

II of the Social Security Act ("SSA"). In a decision dated June 29, 2009, Nolen-Davidson was

found disabled beginning on January 31, 2009. (Transcript ("Tr.") at 21, *see* T. 75-76.) After a

disability review, the SSA, on July 4, 2016, found that Nolen-Davidson was no longer disabled,

effective July 1, 2016. (Tr. 21; *see* Tr. 77-92.) This determination was upheld on reconsideration.

(Tr. 21; *see* Tr. 93-118.) Nolen-Davidson then requested a hearing before an administrative law

1

judge ("ALJ"). (Tr. 21; *see* Tr. 122-23.) On November 14, 2019, a hearing was held before the ALJ, and, on December 23, 2019, the ALJ found that Nolen-Davidson's disability ended on July 1, 2016 and that Nolen-Davidson had not become disabled again since that date. (Tr. 21-32, 40-74.) Nolen-Davidson then filed a written request for review of the ALJ's decision to the Appeals Council. (Tr. 221-23.) On August 3, 2020, the Appeals Council denied Nolen-Davidson's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-5.)

## II. STANDARD OF REVIEW

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

If a claimant is entitled to DIB, his or her continued entitlement to those benefits must be reviewed periodically. *See* 20 C.F.R. § 404.1594(a). For disabled adults, the Commissioner must

determine if there has been "medical improvement" in the claimant's impairments and, if so, whether this medical improvement is related to the claimant's ability to work. *See* 20 C.F.R. § 404.1594(a). "Medical improvement" is any decrease in the medical severity of a claimant's impairments which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* The "most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether [a claimant was] disabled or continued to be disabled which became final." 20 C.F.R. § 404.1594(b)(7). This decision is also known as the "comparison point decision" or "CPD." *Ball v. Berryhill*, No. 18-4750, 2019 WL 2079841, at *3 (E.D. La. Feb. 27, 2019).

In determining whether medical improvement occurred, an ALJ is tasked with comparing the current medical severity of the claimant's impairment(s) which was present at the time of the CPD to the medical severity of those same impairments at the time the CPD was rendered. 20 C.F.R. § 404.1594(c)(1). If medical improvement has occurred, the ALJ must compare the claimant's current functional capacity to do basic work activities (*i.e.*, his or her residual functional capacity) based on the previously existing impairments with the claimant's prior residual functional capacity in order to determine whether the medical improvement is related to the claimant's ability to do work. 20 C.F.R. § 404.1594(c)(2).

The Commissioner has promulgated regulations that provide procedures for evaluating continued disability. *See* 20 C.F.R. § 404.1594. The regulations include a multi-step evaluation

process for determining whether a disability benefit claimant continues to be disabled.  *See* 20 C.F.R. § 404.1594(f).  These steps, as relevant here, are summarized as follows:

    (1) whether claimant is engaging in substantial gainful activity;

    (2) if not engaging in substantial gainful activity, whether the claimant has an impairment or combination of impairments which meets or equals a section in the Listing;

    (3) if impairments do not meet or equal a listing, whether there has been medical improvement;

    (4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work (*i.e.*, whether there has been an increase in the residual functional capacity ("RFC") based on the impairment(s) that was present at the time of the most favorable medical determination);

    (5) if medical improvement is related to the claimant's ability to do work, whether the claimant has a severe impairment;

    (6) if the claimant has a severe impairment, whether the claimant can perform past relevant work; if so, disability will be found to have ended; and

    (7) if the claimant cannot perform his past relevant work, whether the claimant can do other work given the RFC assessment and the claimant's age, education, and past work experience.

20 C.F.R. § 404.1594(f).

      "Even though the burden of proving disability is on the claimant, 'once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged.'"  *Smith v. Comm'r of Soc. Sec.*, No. 3:16CV212-RP, 2017 WL 2292795, at *2 (N.D. Miss. May 24, 2017) (quoting *Buckley v. Heckler*, 739 F.2d 1047, 1049)).  "In other words, once benefits have been awarded, the claimant is afforded a 'presumption of continuing disability that requires the Secretary to provide evidence' that the claimant's condition has improved."  *Smith*, 2017 WL 2292795, at *2 (quoting *Taylor v. Heckler*, 742 F.2d 253, 255 (5th Cir. 1984)).  The Commissioner must also weigh the facts which

4

formed the basis for the prior determination of disability with the Commissioner's new evidence and any additional evidence submitted by the claimant. *Smith*, 2017 WL 2292795, at *2. In termination proceedings, the ultimate burden of proof lies with the Secretary. *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

### III. ISSUES

In her brief, Nolen-Davidson presents the following issues:

(1) Whether the ALJ's decision is procedurally defective because the ALJ used the wrong CPD; and

(2) Whether the ALJ erred in failing to consider all of Nolen-Davidson's work-related limitations in determining her residual functional capacity ("RFC").

(Plaintiff's Brief ("Pl.'s Br.") at 1-2, , 5-9.)

### IV. ALJ DECISION

In a decision dated June 29, 2009, Nolen-Davidson was found disabled beginning January 31, 2009. (Tr. 21, 23.) Thereafter, on July 4, 2016, the SSA determined that Nolen-Davidson was no longer disabled, effective July 1, 2016. (Tr. 21.) On December 23, 2019, the ALJ upheld the July 4, 2016 decision by the SSA that Nolen-Davidson was no longer disabled, effective July 1, 2016. In making this determination, the ALJ found that the most favorable medical decision finding that Nolen-Davidson was disabled was the decision dated June 29, 2009, which is known as the CPD. (Tr. 23.) At the time of the CPD, Nolen-Davidson had the medically determinable impairment of "seizure disorder." (Tr. 23.) Such impairment was found to have met section 11.02 of the Listing. (Tr. 23.)

The ALJ next found that Nolen-Davidson did not engage in substantial gainful activity through the date of his decision. (Tr. 23.) He also found that the medical evidence established that, since July 1, 2016, Nolen-Davidson had the following medically determinable impairments:

5

"seizure disorder, major depressive disorder, and generalized anxiety disorder." (Tr. 23.)  Next, the ALJ found that, since July 1, 2016, Nolen-Davidson had not had an impairment or combination of impairments that met or equaled a section in the Listing. (Tr. 23-25.)  Thereafter, the ALJ found that: (1) medical improvement occurred on July 1, 2016 and (2) the medical improvement was related to Nolen-Davidson's ability to work because, by July 1, 2016, Nolen-Davidson's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. (Tr. 25.)

As noted above, the ALJ found that Nolen-Davidson continued to have the "severe" impairments of seizure disorder, major depressive disorder, and generalized anxiety disorder. (Tr. 25.)  As to Nolen-Davidson's RFC, the ALJ stated:

> Based on the impairments present since July 1, 2016, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never operate a motor vehicle, work at unprotected heights, or work around moving mechanical parts.  She can perform simple, routine, and repetitive tasks, but not at a production rate pace.  She can make simple work[-]related decisions.  She can have occasional contact with supervisors, coworkers, and the public.

(Tr. 26 (emphasis omitted).)

At the next step, the ALJ found that Nolen-Davidson, since July 1, 2016, has been unable to perform her past relevant work. (Tr. 30.)  However, relying on the testimony of a vocational expert ("VE"), the ALJ found that, since July 1, 2016, Nolen-Davidson was able to perform a significant number of jobs that existed in the national economy. (Tr. 31-32.)  Consequently, the ALJ concluded that Nolen-Davidson's disability ended on July 1, 2016 and she had not become disabled again since that date. (Tr. 32.)

## V. DISCUSSION

### A.    <u>Comparison Point Decision</u>

In her brief, Nolen-Davidson claims that the ALJ's decision is procedurally defective because the ALJ erroneously found that the CPD was June 29, 2009 instead of June 1, 2012. (Pl.'s Br. at 7-9.) Specifically, Nolen-Davidson states:

> The ALJ maintained that the comparison date point is June 29, 2009. The ALJ was wrong.
>
> The State Agency determination clearly establishes that the most recent fully favorable decision (*i.e.*, the [CPD]) is June 1, 2012. As of June 1, 2012, it was determined that the Plaintiff continues to satisfy the requirements of section 11.02A of Appendix 1 for presumptive disability, based upon her seizure disorder.
>
> At the reconsideration level, the disability hearing officer erroneously claimed that the comparison point date was June 26, 2009. But the fact that the disability hearing officer erred in using the wrong comparison date does not excuse the ALJ's failure to use the proper date.
>
> Accordingly, the ALJ's decision failed to consider the Plaintiff's condition as of June 1, 2012 and failed to compare the severity of the Plaintiff's impairments between June 1, 2012 and July 1, 2016, the date of the proposed cessation. As the decision is procedurally defective, this matter should be remanded to the Commissioner with instructions to compare the severity of the Plaintiff's impairments as of July 1, 2016 with the severity of her impairments as of June 1, 2012.

(Pl.'s Br. at 8-9 (citations omitted).)

A cessation of disability benefits requires a finding of medical improvement. 20 C.F.R. § 404.1594(a). "For purposes of determining whether medical improvement has occurred, the Commission must compare the current medical severity of the claimant's impairments to those that were present at the time of the most recent favorable medical decision that determined the claimant was disabled or continued to be disabled, *i.e.*, the [CPD]." *Bruno, M v. U.S. Comm'r, Soc. Sec. Admin.*, No. 6:19-cv-00886, 2020 WL 5269741, at *4 (W.D. La. Aug. 6, 2020). Pursuant to 20 C.F.R. 404.1594(b)(7), the most recent favorable medical decision is the latest final decision

involving a consideration of the medical evidence and the issue of whether the claimant was disabled or continued to be disabled.

In this case, citing to a Disability Determination Explanation ("DDE") dated in July 2016, Nolen-Davidson claims that the ALJ erred by using a CPD date of June 26, 2009 instead of a CPD date of June 1, 2012. In the July 2016 DDE, the CPD date was twice listed as June 1, 2012. (Tr. 77, 79.) However, Nolen-Davidson does not provide any evidence indicating that a medical decision in her case was actually made on June 1, 2012, nor does she cite to any legal authority supporting her claim. Moreover, evidence in the record indicates that "[t]here have been no subsequent favorable medical decisions" since June 26, 2009; thus, the ALJ correctly concluded that the CPD is June 26, 2009. (*See, e.g.*, Tr. 97.)  In addition, all the evidence in the record reviewed by the Court, besides the one DDE relied upon by Nolen-Davidson, uses the date of June 26, 2009 as the CPD. Thus, the Court concludes that the July 2016 DDE listing the CPD as June 1, 2012 was the result of a scrivener's error and that the correct CPD of June 26, 2009 was properly used by the ALJ. *See, e.g., Gatewood v. Berryhill*, No. 5:16-CV-060-BQ, 2017 WL 1737904, at *3-4 (N.D. Tex. Mar. 14, 2017 ("In cases where the error has no effect on the analysis or the outcome, courts . . .consider it to be a scrivener's error.") Because the ALJ did not err, remand is not required.[1]

### B.    Mental RFC Determination

In her brief, Nolen-Davidson also argues that the ALJ erred in failing to include all of Nolen-Davidson's functional limitations in the RFC determination. (Pl.'s Br. at 9-12.)

---

[1] Even if the ALJ had erred in using the wrong CPD, the Court finds that any such error was harmless as there is no evidence indicating Nolen-Davidson was prejudiced by the alleged error. *Mays v.* Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("Procedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected.").

Specifically, Nolen-Davidson complains that the ALJ failed to properly consider the opinions of: (1) Michael Hightower, Ph.D. ("Dr. Hightower"), a clinical neuropsychologist; (2) Charlece Hughes, M.D. ("Dr. Hughes"), Nolen-Davidson's treating neurologist; and (3) Betty Eitel, Ph.D. ("Dr. Eitel"), a consultative examiner, in formulating the ALJ's mental RFC determination. (Pl.'s Br. at 10-12.)

An individual's RFC describes what an individual can do despite her limitations. SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most. *Id.* The RFC is a function by function assessment, with both exertional and non-exertional factors considered, and is based on all of the relevant evidence from the record. *Id.* at *3-6. The ALJ determines a claimant's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as fact finder has the sole

responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

In his decision, the ALJ, as set forth above, found that Nolen-Davidson had the RFC to perform a full range of work at all exertional levels with the following nonexertional mental limitations: (1) she could perform simple, routine, and repetitive tasks but not at a production rate pace; (2) she could make simple work-related decisions; and (3) she could have occasional contact with supervisors, coworkers, and the public. (Tr. 26.) In making such a determination, the ALJ, stated, *inter alia*, the following as to the opinion evidence in the record:

> The undersigned has further considered the opinion of state agency consultant, Leela Reedy, M.D. Dr. Reedy opined the claimant has a marked limitation in her ability to understand, remember, and carry out detailed instructions, and additional moderate limitations in her ability to sustain concentration and persistence and interact with others. The undersigned finds the bulk of Dr. Reedy's opinion is persuasive, as even the opined marked limitations remain consistent with the ability to perform simple, routine, and repetitive tasks. Dr. Reedy's review of the record and provided explanation support her provided opinion. Furthermore, Dr. Reedy's opinion is generally consistent with the record as a whole. . . .

> The undersigned has considered the opinion of consultative examiner, Betty Eitel, Ph.D. Dr. Eitel opined the claimant is able to understand, carry out, and remember instructions only for one-two steps; she cannot sustain concentration and persist in work-related activity at a reasonable pace; and she cannot maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public; or deal with normal pressures in a competitive work setting. Dr. Eitel examine[d] the claimant, which positions her well to provide an opinion on the claimant's abilities. However, the undersigned finds her opinion is generally not persuasive. Dr. Eitel relies on her examination results to support her opinion; however, she notes the claimant's concentration and memory appear only "slightly impaired." A "slight" impairment does not support the extensive opined limitations. Furthermore, Dr. Eitels' [sic] opinion is generally inconsistent with the record as a whole. Most notably, the claimant's treatment providers have also described the claimant's memory as intact. The claimant further testified she is able to care for her children, including dressing and feeding her children, drive, and[] perform basic household chores.

> The undersigned finds the opinions of the claimant's treatment provider, Charlece Hughes, M.D., are not persuasive. Dr. Hughes opined the claimant . . .

has up to a "substantial loss" in her ability to understand and carry out instructions; an "extreme loss" in her ability to sustain concentration and persistence; a "substantial loss" in her ability to interact with others; and up to an "extreme loss" in her ability to adapt to changes in a routine work setting. Dr. Hughes further opined the claimant will miss more than four days of work per month, and she can perform work at the sedentary exertional level with additional manipulative limitations, but she can only sit for a total for three-hours in an eight-hour workday and she needs to lie down for a total of two hours in an eight-hour workday. Dr. Hughes has treated the claimant for her impairments, which positions Dr. Hughes well to provide an opinion on the claimant's abilities. However, Dr. Hughes does not provide any detailed support for the provided "check box" and "circled" opinions. Furthermore, Dr. Hughes' opinions are generally inconsistent with the record as a whole. Most notably, there is no evidence the claimant would miss work as often as opined, as the claimant testified she could not remember the last time she experienced a seizure. Additionally, the record demonstrates the claimant has managed her sleep well with medication, noting melatonin helps her sleep "a lot better." Moreover, during the claimant's consultative examination, she was able to recall four words immediately, two out of four words within a five-minute delay, and all four words with prompts after a five-minute delay. She was also able to perform serial 2's and spell "world" backwards. The claimant's treatment providers have also described the claimant's memory as intact.

The undersigned finds the opinion of clinical neuropsychologist, Michael Hightower, Ph.D., is not persuasive. Dr. Hightower opined the claimant will have "significant difficulty" returning to work in a competitive capacity unless she had someone there to supervise her almost moment to moment. Dr. Hightower's examination of the claimant supports his opinion, as the claimant demonstrated a "clearly impaired" ability to sustain attention and in her working memory. However, Dr. Hightower's examination occurred over three years ago. Furthermore, Dr. Hightower's opinion is generally inconsistent with the record as a whole. Most notably, the claimant testified she is able to care for her children, including dressing and feeding her children, drive, and[] perform basic household chores. Additionally, during the claimant's consultative examination, she was able to recall four words immediately, two out of four words with a five-minute delay, and all four words with prompts after a five-minute delay. The claimant's treatment providers have also described the claimant's memory as intact.

The undersigned did not address evidence that was neither inherently valuable nor persuasive in accordance with 20 CFR §404.1520b(c).

(Tr. 27-30 (citations omitted).)

Based on the foregoing, it is clear that the ALJ properly considered the opinions of Drs.

Hightower, Hughes, and Eitel in formulating Nolen-Davidson's mental RFC determination. As

set forth above, the ALJ specifically considered their opinions but, based on Dr. Reedy's opinion as well as Nolen-Davidson's own testimony and other evidence in the record, ultimately concluded that Nolen-Davidson was not as limited as Drs. Hightower, Hughes, and Eitel opined.

In this case, the ALJ properly considered the evidence as a whole. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g.*, *Muse*, 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required as to this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions

accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 7, 2021** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 24, 2021.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

13